SMS/IND
2015R00392

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Susan D. Wigenton |
| v. | : | Crim. No. 20-494 |
| SAMORA PATTERSON | : | 18 U.S.C. § 1956(h) 18 U.S.C. § 1957(a) 18 U.S.C. § 2 |

## **INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

## **COUNT ONE**
(Conspiracy to Transact in Criminal Proceeds)

### **Background**

1. Unless otherwise indicated, at all times relevant to this Indictment:

   a. Defendant Samora Patterson ("PATTERSON") resided in a home in or around Irvington, New Jersey (the "Irvington Residence").

   b. Defendant PATTERSON created and controlled Samora Construction, LLC, and Patterson Investment Group, LLC, both located in or around East Orange, New Jersey.

   c. Defendant PATTERSON maintained a bank account opened in or around New Jersey under the company name "Samora Construction, LLC" with Bank A, a financial institution, as defined in Title 18, United States Code, Section 1956(c)(7), with branch offices located in the District of New Jersey and elsewhere (the "Samora Construction Account").

  d. Real Estate Company A was a residential real estate company located in Hackettstown, New Jersey that owned the Irvington Residence.

  e. Title Company A was a title company located in or around Tampa Bay, Florida.

  f. Real Estate Companies B, C, and D were each commercial real estate companies that owned properties located in Florida. Real Estate Companies B, C, and D were collectively controlled by a single individual, hereinafter referred to as the "President."

  g. Individual-1 was a co-conspirator of defendant PATTERSON in the scheme described below.

## The Illegal Proceeds

2. From at least as early as on or about April 6, 2015, unknown individuals (the "Actors") engaged in a wire fraud scheme that caused over $2.3 million in losses to Title Company A and others.

3. Specifically, in or around March 2015, Real Estate Companies B, C, and D (collectively, the "Sellers") entered into a multi-million dollar transaction to sell three commercial real estate properties to another entity (the "Transaction"). Title Company A was the closing agent for the Transaction.

4. The Transaction was scheduled to close on or about May 7, 2015. At the time of the closing, Title Company A was to wire approximately $2,367,233.20 in closing proceeds (the "Closing Proceeds") from Title Company A

to the Sellers in accordance with instructions the President of the Sellers was to provide to Title Company A.

5. On or about May 6, 2015, the President sent an email to representatives of Title Company A with wire instructions for transfer of the Closing Proceeds. Revised wire instructions were sent by the President to representatives of Title Company A on or about May 7, 2015, at 10:44 a.m.

6. On or about May 7, 2015, at 11:32 a.m., using an email address that appeared similar to the President's corporate email address, the Actors sent fraudulent emails to representatives of Title Company A with new wire instructions for sending the Closing Proceeds (the "Fraudulent Emails"). The Fraudulent Emails directed Title Company A to wire the approximately $2,367,233.20 in Closing Proceeds to the Samora Construction Account.

7. Title Company A's representatives, believing that the Fraudulent Emails were legitimate and from the Sellers, wired approximately $2,367,233.20 from Title Company A's account to the Samora Construction Account at a branch of Bank A in or around New Jersey on or about May 7, 2015.

8. Thereafter, the Sellers confirmed that they never received the Closing Proceeds and that they had, in fact, been stolen.

9. After the Closing Proceeds were received in the Samora Construction Account, defendant PATTERSON and Individual-1 attempted to withdraw, and did withdraw, some of those proceeds, knowing that the funds were derived from criminal activity.

10. From at least as early as on or about April 6, 2015, through in or around June 2015, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

**SAMORA PATTERSON**,

did knowingly and intentionally conspire and agree with others to knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, wire fraud in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957.

### Goal of the Conspiracy

11. The goal of the conspiracy was for defendant PATTERSON, Individual-1, and others to distribute and profit from the illegal proceeds of the wire fraud scheme described herein.

### Manner and Means of the Conspiracy

12. It was part of the conspiracy that defendant PATTERSON, Individual-1, and other individuals, known and unknown, conspired and agreed that defendant PATTERSON would receive some or all of the funds fraudulently transferred into the Samora Construction Account from the Closing Proceeds.

13. It was further part of the conspiracy that, on or about May 8, 2015, the day after the Closing Proceeds were misdirected into the Samora

Construction Account, defendant PATTERSON visited a branch of Bank A located in or around Orange, New Jersey.

14. It was further part of the conspiracy that, at Bank A, defendant PATTERSON withdrew approximately $2,360,000 from the Samora Construction Account in the form of four cashier's checks made payable to Patterson Investment Group LLC, in the approximate amounts of $575,000, $585,000, $550,000, and $650,000.

15. It was further part of the conspiracy that, shortly thereafter, defendant PATTERSON unsuccessfully attempted to cash the $650,000 cashier's check he had obtained from Bank A at a check-cashing establishment in or around Hillside, New Jersey.

16. It was further part of the conspiracy that, on or about May 8, 2015, defendant PATTERSON returned to a branch of Bank A in or around South Orange, New Jersey, deposited approximately $290,000 back into the Samora Construction Account, and withdrew two new checks made payable to Patterson Investment Group LLC in the amounts of approximately $200,000 and $150,000. Defendant PATTERSON also withdrew approximately $10,000 in cash.

17. It was further part of the conspiracy that on or about May 11, 2015, defendant PATTERSON visited a different check-cashing establishment in or around Manhattan, New York, and successfully cashed the $150,000 cashier's

check made payable to Patterson Investment Group LLC that he had obtained from Bank A.

18. It was further part of the conspiracy that on or about May 11, 2015, defendant PATTERSON visited another branch of Bank A in or around Manhattan, New York, and withdrew approximately $270,000 from the Samora Construction Account in the form of two cashier's checks, one for approximately $100,000 made payable to Patterson Investment Group LLC, and another for approximately $170,000 made payable to Real Estate Company A. Defendant PATTERSON also withdrew an additional $9,000 in cash.

19. It was further part of the conspiracy that defendant PATTERSON then met with the owner of Real Estate Company A and provided him with the cashier's check for approximately $170,000 and attempted to use it to purchase the Irvington Residence.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWO

(Transacting in Criminal Proceeds)

20. Paragraphs 1 through 19 of this Indictment are hereby re-alleged and incorporated as though set forth in full herein.

21. On or about May 8, 2015, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

**SAMORA PATTERSON**,

did knowingly engage and attempt to engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, specifically a withdrawal of approximately $2,360,000 through four separate cashier's checks in the approximate amounts of $575,000, $585,000, $550,000, and $650,000, such property having been derived from a specified unlawful activity, namely, wire fraud in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1957(a) and Section 2.

## FORFEITURE ALLEGATIONS

1. As the result of committing the offenses charged in this Indictment, the defendant,

**SAMORA PATTERSON**,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the charged money laundering offenses, and all property traceable to such property.

### Substitute Assets Provision

2. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

A TRUE BILL

FOREP[ERSON]

_____
CRAIG CARPENITO
United States Attorney

CASE NUMBER: <u>20-__494_____</u>

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

SAMORA PATTERSON

## INDICTMENT FOR

18 U.S.C. §§ 1956(h), 1957(a)
18 U.S.C. § 2



**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Sean M. Sherman
*ASSISTANT U.S. ATTORNEY*
973-645-2733